USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/16/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAMON EDWARDS,                                          :
                                                       :
                            Plaintiff,                 :        **OPINION & ORDER**
                                                       :
            -against-                                  :
                                                       :        21-CV-5985 (JLC)
KILOLO KIJAKAZI,[1]                                     :
Acting Commissioner,                                   :
Social Security Administration,                        :
                                                       :
                            Defendant.                 :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Damon Edwards seeks judicial review of a final determination by Kilolo

Kijakazi, the Acting Commissioner of the Social Security Administration, denying

his application for disability insurance benefits under the Social Security Act.  The

parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure.  For the reasons set forth below, the

Commissioner's motion is granted, and Edwards' motion is denied.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she
is substituted as the defendant in this action.

# I.   BACKGROUND

## A. Procedural History

Edwards filed an application for disability insurance benefits on July 16, 2019 with an Alleged Onset Date ("AOD") of August 15, 2018.[2]  Administrative Record ("AR"), Dkt. No. 9, at 190.[3]  The Social Security Administration ("SSA") denied Edwards' claim on October 17, 2019, and it denied a request for reconsideration on March 4, 2020.  *Id.* at 129, 142.  On April 22, 2020, Edwards requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 155.  Edwards, represented by counsel, testified via telephone before ALJ Kieran McCormack at an administrative hearing on October 26, 2020.  *Id.* at 47–98.  In a decision dated November 4, 2020, the ALJ found Edwards not disabled, and denied his claim.  *Id.* at 21.  Edwards sought review of the ALJ's decision by the Appeals Council, which denied his request on May 10, 2021, rendering the ALJ's decision the final decision of the Commissioner.  *Id.* at 1.

Edwards timely commenced this action on July 13, 2021, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §405(g).  *See* Complaint, Dkt. No. 1.  The Commissioner answered Edwards' complaint by filing

---

[2] While Edwards contends that he filed his application on July 16, 2019, Pl. Mem. at 2 (citing AR at 190), the ALJ's decision dated the application as of June 20, 2019. AR at 13.  This difference does not affect the analysis or disposition of the case.

[3] The page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

the administrative record on November 22, 2021.  Dkt. No. 9.  On February 21,

2022, Edwards moved for judgment on the pleadings and submitted a memorandum

of law in support of his motion.  Motion for Judgment on the Pleadings, Dkt. No. 12;

Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the

Pleadings ("Pl. Mem."), Dkt. No. 13.  The Commissioner cross-moved for judgment

on the pleadings on April 22, 2022, and she submitted a memorandum in support of

her cross-motion.  Notice of Cross-Motion for Judgment on the Pleadings, Dkt. No.

17; Memorandum of Law in Support of Commissioner's Cross-Motion for Judgment

on the Pleadings ("Def. Mem."), Dkt. No. 18.  Edwards did not file reply papers.  The

parties consented to my jurisdiction for all purposes on April 25, 2022.  Dkt. No. 19.

### B. Administrative Record

#### 1. Edwards' Background

Edwards was born on January 28, 1979.  AR at 190.  The highest level of

education he completed was twelfth grade.  *Id.* at 78–79.  In August 2018, Edwards

was involved in a motor vehicle accident while driving a delivery truck as part of his

employment with Whole Foods.  *Id.* at 67.  The accident resulted in injuries to his

back, neck, right shoulder, and right wrist and hand.  *Id.* at 52–53, 67.

#### 2. Relevant Medical Evidence

Edwards and the Commissioner have each provided a summary of the

medical evidence contained in the administrative record.  *See* Pl. Mem. at 4–8; Def.

Mem. at 2–3.  "The Court adopts these summaries, which do not materially conflict

with each other, as accurate and complete for the purpose of considering the issues

3

raised in this suit, except to the extent we discuss additional records below."
*Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 210 (S.D.N.Y. 2017).  The
Court will discuss the medical evidence pertinent to the adjudication of this case in
Section II(B) below.

### 3. ALJ Hearing

On October 26, 2020, Edwards appeared at a telephone hearing before ALJ
McCormack, represented by attorney Alan Karmazin.  AR at 47.  Vocational Expert
("VE") Marian R. Marracco also appeared by telephone and testified.  *Id.*  At the
time of the hearing, Edwards was 41 years old and lived in Mount Vernon, New
York.  *Id.* at 40–42, 79.  At the hearing, Karmazin explained that Edwards' injuries
stem from an August 2018 motor vehicle accident.  *Id.* at 52–53.

The ALJ first questioned Edwards about his work history.  Edwards testified
that he worked from 2008 to 2010 as Head of Maintenance at New York Whitehall
Transportation, where he cleaned commercial buses and prepared them for their
daily trips.  *Id.* at 55–57.  He explained that he subsequently worked until August
2018 for Whole Foods as a "delivery driver[/]cashier," where he drove a refrigerator
van and delivered items, and would occasionally work as a cashier.  *Id.* at 59–64.
Based on the foregoing, the VE classified Edwards' prior work history as a bus
cleaner and delivery driver.  *Id.* at 58–59, 63–64.  The ALJ then asked Edwards
about earnings he had between August 2018 and the first three months of 2019.  *Id.*
at 64–67.  Edwards explained that he "didn't go back to work after [he] reported the
accident" that occurred in August 2018 because of his injuries, but that he was still

employed at Whole Foods through July 2019 as he "thought [he] still had a job there, and . . . could go back after [he] recovered." *Id*. Edwards stated that received worker's compensation benefits up until early October 2020. *Id*. at 67.

Next, the ALJ asked Edwards about his injuries. Edwards testified that he received an injection in his back in December 2018, and that his back pain "limits things [he] can move." *Id*. at 68. He explained that he has "a lot of problems standing up for long periods of time" and that if he sits for too long, he needs to lie down. *Id*. In addition, he stated that he "get[s] shooting pain" "up and down" "the spine and the side of [his] arm and up and down [his] neck," which causes him to "lay down a lot." *Id*. Edwards testified that he has used a cane and a back brace since the surgery on his back and spinal injection. *Id*. Edwards also explained that he received an injection in his neck in March of 2019. *Id*. at 69. He stated that he is unable to drive "because of . . . medication," which causes him to be "too drowsy" to drive. *Id*. at 69, 74.

With respect to his right shoulder, arm, and hand, Edwards testified that despite physical therapy, they "still hurt" when he tries to do everyday tasks around the house. *Id*. He explained that he has problems with tasks such as "bending down, tying [his] shoes," "putting on clothes," picking up objects, and "holding things in [his] hand." *Id*. at 69–70. Edwards testified that his girlfriend helps him with everyday tasks around the house. *Id*. at 69. He stated that he wears a sling to "minimize rotation and movement" because when the arm "swings, it hurts the joint in the shoulder." *Id*. at 70. Edwards testified that he has "just a little pain in [his

5

right] arm" and the pain "shoot[s]" down the right hand, so he is "using his left hand more." *Id.* at 70–71.  He stated that he cannot use his right hand for anything, including using a television remote, utensils to eat a meal, or his phone because when he "press[es] down" with his fingers, he "feel[s] the shooting pain in [his] elbow," which goes up into his shoulder.  *Id.* at 71.  Edwards testified that he is taking three types of pain medication, but they do not help him, and the side effects include drowsiness and sleepiness.  *Id.* at 71–72.

Edwards then testified that on a typical day, he is "up most of the night because [he] can't sleep from the pain."  *Id.* at 73.  During the day, he is either "lying down in the bed or [on] the couch or watching TV."  *Id.*  Edwards stated that although he will mainly "sit back and lay down" on the left side of his body, he is "constantly up and down because of the medication [he has] to take," which results in him "feeling more and more pain."  *Id.*  He testified that his girlfriend does the chores around his house as he is not able to do them.  *Id.* at 74.  His girlfriend will also get sandwiches ready for him so that he does not need to "pull on anything, like the refrigerator."  *Id.* at 73.

In response to questions from his attorney, Edwards testified that he is no longer able to draw because it hurts too much to press down on paper with pen or pencil in his hand.  *Id.* at 75.  He testified that he is unable to clean or cook, and "can[not] hold on to things" with his hand.  *Id.* at 76.  Edwards explained that he can comfortably sit for only 10 to 20 minutes until his back starts hurting, he "go[es] into a rocking motion," and is in further discomfort due to rectal bleeding.  *Id.* at 77.

6

He testified that he can comfortably stand for 10 or 15 minutes without having to move or lie down due to lower back pain. *Id.* at 78. He also testified that he can comfortably walk for about 20 minutes followed by a period of rest for 30 minutes, after which he can walk again for another 20 or 30 minutes. *Id.* Lastly, Edwards testified that the highest level of education he completed was twelfth grade. *Id.* at 78–79.

The ALJ then posed four hypotheticals to the VE. *Id.* at 79–95. For the first hypothetical, the ALJ asked the VE to consider an individual who can

> perform light work  . . . [but] cannot climb ladders, ropes, [or] scaffolds . . . . The individual can climb ramps and stairs, push, pull, balance, bend, stoop, kneel, crouch, and crawl occasionally . . . can reach overhead with the dominant right arm occasionally . . . [and] can finger with the dominant right hand occasionally . . . . The individual cannot work at jobs requiring the operation of motor vehicles or heavy machinery . . . [and] cannot work at jobs containing any exposure to unprotected heights, unprotected machinery, and/or machinery with moving mechanical parts.

*Id.* at 80. The VE testified that for such an individual, Edwards' past relevant work as a bus cleaner and delivery driver would be eliminated. *Id.* at 81. However, the VE testified that such an individual could perform the jobs of garment sorter (if the specific position was modified to not involve overhead reaching), cafeteria attendant, and usher. *Id.* The ALJ then posed a second hypothetical to the VE, and asked if jobs would exist in significant numbers in the national economy if the limitations from the first hypothetical were amended from a light capacity to a sedentary capacity but "with all the remaining postural and, reaching and manipulative limitations and environmental limitations from hypo[thetical] one."

7

*Id.* at 81–82.  The VE testified that such an individual could perform the jobs of clerk for customer service (again if the specific position was modified to not involve overhead reaching), greeter, and security system monitor.  *Id.* at 82–83.

As a third hypothetical, the ALJ asked the VE to amend the second hypothetical's reaching limitations such that "the individual can reach in all directions, including overhead, with the dominant right arm on an occasional basis." *Id.* at 88.  The VE testified that the only remaining job would be the security system monitor.  *Id.*  For his fourth hypothetical, the ALJ added on to the first two hypotheticals the limitation that the individual "can only work at jobs allowing [him] to be off task by at least 15 percent of the day during the course of an eight-hour workday."  *Id.*  The VE testified that no jobs would exist to fit that hypothetical, as "15 percent off task at the unskilled level is beyond the acceptable threshold and it would be preclusive of employment."  *Id.* at 88–89.

Finally, Edwards' attorney questioned the VE.  He asked if any of the jobs at the light exertional level would be eliminated if the individual had "to make use of a hand-held device, such as a cane[.]" *Id.* at 91.  The VE responded that the garment sorter and cafeteria attendant jobs would be eliminated but the usher job would remain, although the number of usher jobs available would be cut by "maybe 25 percent."  *Id.* at 91, 93.  The VE further explained that the use of an assistive device "does not affect the performance of the essential functions of a sedentary job."  *Id.* at 92.  The VE concluded with testimony that "all" of the jobs given for both the light

and sedentary levels would tolerate no absenteeism in the first three months of employment.  *Id.* at 93.

### 4.  The ALJ's Decision

The ALJ denied Edwards' application on November 4, 2020.  *Id.* at 21.  In doing so, the ALJ concluded that Edwards was not disabled under sections 216(i) and 223(d) of the Social Security Act from August 15, 2018 through the date of the decision.  *Id.*

In his analysis, the ALJ followed the five-step test set forth in the SSA regulations.  After determining that Edwards met the insured status requirements of the Social Security Act through December 31, 2020, the ALJ found at step one that Edwards "ha[d] not engaged in substantial gainful activity since August 15, 2018, the alleged onset date."  *Id.* at 15.  At step two, the ALJ found that Edwards had the severe impairments of "cervical and lumbar disc herniations; cervical and lumbar radiculopathy; right shoulder labral tear, tendon tear, and bursitis status post-arthroscopic surgery; right hand arthritis; right hip strain; and right knee sprain."  *Id.*  In reaching this conclusion at step two, the ALJ considered not only the medical records that supported the finding, but also the record evidence for additional ailments the ALJ determined to be not severe.  *Id.* at 15–17.  Based on a review of the evaluations completed by psychological consultative examiner Dr. Seth Sebold, state agency consultative examiner Dr. E. Kamin, and state agency medical consultant Dr. L. Blackwell, the ALJ applied "the four broad areas of mental functioning set out in the disability regulations for evaluating mental

disorders" to conclude that Edwards' medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas. *Id.* at 16. The ALJ concluded that Edwards' mental impairments did not rise to the level of a severe impairment. *Id.* at 16. Specifically, ALJ found that Edwards'

> forehead lipoma, facial cellulitis, facial cysts, ganglion cyst of the left wrist, and unspecified depressive disorder do not result in more than minimal limitation in his ability to perform basic work activities. As such, these conditions are non-severe in nature. Nevertheless, all medically supported restrictions have been incorporated into the decision's residual functional capacity assessment, including those stemming from both severe and non-severe impairments.

*Id.* at 17. He specified that the residual functional capacity ("RFC") assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.*

At step three, the ALJ determined that Edwards did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* Prior to step four, the ALJ assessed Edwards' RFC. *Id.* at 17–20. The ALJ concluded that Edwards has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except [Edwards] cannot climb ladders, ropes, or scaffolds. He can climb ramps and stairs, push/pull, balance, bend, stoop, kneel, crouch, and crawl on an occasional basis. He can reach overhead with his dominant right arm on an occasional basis. He can finger with his dominant right hand on an occasional basis. He cannot operate motor vehicles or heavy machinery. He also cannot work at jobs containing any exposure to

> unprotected heights, unprotected machinery, and/ or
> machinery with moving mechanical parts.

*Id*. at 17.  In reaching this decision, the ALJ considered Edwards' hearing testimony
as well as medical and other evidence in the record.  *Id*. at 17–20.  The ALJ
determined that Edwards' "statements concerning the intensity, persistence[,] and
limiting effects of these symptoms [were] not entirely consistent with the medical
evidence and the other evidence in the record . . . ."  *Id*. at 18.  The ALJ also
provided an analysis as to which medical opinions with respect to physical
impairments he found to be persuasive, which he found to be unpersuasive, and
why.  *Id*. at 19.

At step four, the ALJ concluded that Edwards was "unable to perform any
past relevant work."  *Id*. at 20.  At step five, considering Edwards' "age, education,
work experience, and residual functional capacity," the ALJ concluded that jobs
"exist in significant numbers in the national economy" that Edwards could perform,
including customer service clerk and security system monitor.  *Id*. at 20–21.
Accordingly, the ALJ determined that Edwards was "not disabled" under the Social
Security Act.  *Id*. at 21.

## II.   DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the
Commissioner "in the district court of the United States for the judicial district in
which the plaintiff resides."  42 U.S.C. § 405(g).  The district court must determine

whether the Commissioner's final decision applied the correct legal standards and whether the decision is supported by "substantial evidence." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and alterations omitted); see also *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))).

The substantial evidence standard is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)) (alteration in original).

## 2.  Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy."  42

U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing a claimant's impairments and determining whether they meet

the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security

Act is a remedial statute, to be broadly construed and liberally applied.'"  *Mongeur*,

722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)).

Specifically, the Commissioner's decision must consider factors such as: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3)

subjective evidence of pain or disability testified to by the claimant or others; and

(4) the claimant's educational background, age, and work experience."  *Id*. (citations

omitted).

### a.    Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential

evaluation process' to determine whether a claimant is disabled[.]"  *Estrella v.

Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. §

404.1520(a)(4).  First, the Commissioner must establish whether the claimant is

presently employed.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is

unemployed, the Commissioner goes to the second step and determines whether the

claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R.

§ 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner

moves to the third step and considers whether the medical severity of the

impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is considered disabled. *See id.*; 20 C.F.R. § 404.1520(d).

If the claimant alleges a mental impairment, "the regulations further require that the [Commissioner] 'rate the degree of [the claimant's] functional limitation based on the extent to which [her] impairment(s) interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis.'" *Rosario v. Kijakazi*, No. 20-CV-5490 (JPC) (BCM), 2022 WL 875925, at *11 (S.D.N.Y. Mar. 15, 2022) (quoting 20 C.F.R. § 404.1520a(c)(2)), *adopted by* 2022 WL 976879 (Mar. 31, 2022). "The degree of functional limitation is rated in 'four broad functional areas,' including the claimant's ability to '[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.'" *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3)). The Commissioner uses a five-point scale to determine the degree of limitation in each area: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). "These ratings are used both at step two, to determine whether a mental impairment is 'severe,' and at step three, to determine whether a severe mental impairment meets or medically equals a listed impairment." *Rosario*, 2022 WL 875925, at *11.

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work. *See* 20 C.F.R. §

15

404.1520(a)(4)(iv).  Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether the claimant possesses the ability to perform any other work.  *See* 20 C.F.R. § 404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy.  *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b.   Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits."  *Sims*, 530 U.S. at 111. Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history.  *See Pratts*, 94 F.3d at 37 (citing 20 C.F.R. §§ 404.1512(d)–(f)).  This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's

impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question. Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999))). The ALJ must develop the record even where the claimant has legal counsel. *See, e.g., Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Remand is appropriate where this duty is not discharged. *See, e.g., Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c.   Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y.

Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted).  For SSI and Social Security Disability Insurance applications filed prior to March 27, 2017, SSA regulations set forth the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).  Under the treating physician rule, an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources.  *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000).  In addition, a consultative physician's opinion was generally entitled to "little weight."  *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinion for claims filed on or after March 27, 2017 (such as Edwards' claim in this case).  *See* REVISIONS TO THE RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017).  "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources."  *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *19 (citing 82 Fed. Reg. 5844).  The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  *Id.* (quoting 20

C.F.R. §§ 404.1520c(a), 416.1520c(a)).  "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)–(b), 416 920c(a)–(b).  Under the new regulations, the ALJ must "explain how [she] considered" both the supportability and consistency factors, as they are "the most important factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, No. 20-CV-6389 (RWL), 2022 WL 278657, at *6 (S.D.N.Y. Jan. 31, 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors).  Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)."  *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) *adopted*, 2022 WL 717612 (Mar. 10, 2022).  With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes."  *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base

decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but

need not explicitly discuss, the three remaining factors (relationship with the

claimant, specialization, and other factors tending to support or contradict a

medical opinion). *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[W]hen the

opinions offered by two or more medical sources about the same issue are both

equally well-supported . . . and consistent with the record . . . but are not exactly the

same, the ALJ [should] articulate how [s]he considered the remaining factors in

evaluating the opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8

(W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal

quotations removed).

Courts considering the application of the new regulations have concluded

that "the factors are very similar to the analysis under the old [treating physician]

rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp.

3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting

cases) ("the essence of the rule remains the same, and the factors to be considered in

weighing the various medical opinions in a given claimant's medical history are

substantially similar"). "This is not surprising considering that, under the old rule,

an ALJ had to determine whether a treating physician's opinion was *supported* by

well-accepted medical evidence and *not inconsistent* with the rest of the record

before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at

\*9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at \*5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at \*9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.,* No. 20-CV-7749 (SLC), 2022 WL 819910, at \*8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must explain in all cases how [he or she] considered" supportability and consistency); *Rivera v. Comm'r of Soc. Sec.,* No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at \*22 (S.D.N.Y. Dec. 30, 2020), *adopted by* 2021 WL 134945 (Jan. 14, 2021) (remanding so  ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions").  "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler*, 546 F.3d at 265).  However, the Court need not remand the case if the ALJ only committed harmless error*, i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d.   Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court.  *See Osorio v. Barnhart*, No. 04-CV-7515 (DLC),

2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Id.* (quoting *Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Pena*, 2008 WL 5111317, at *10 (internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. *Id.* First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (citing 20 C.F.R. § 404.1529(a)).

Among the kinds of evidence that the ALJ must consider (in addition to objective

medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location,
> duration, frequency, and intensity of the individual's pain
> or other symptoms; 3. [f]actors that precipitate and
> aggravate the symptoms; 4. [t]he type, dosage,
> effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other
> symptoms; 5. [t]reatment, other than medication, the
> individual receives or has received for relief of pain or
> other symptoms; 6. [a]ny measures other than treatment
> the individual uses or has used to relieve pain or other
> symptoms (e.g., lying flat on his back, standing for 15 to
> 20 minutes every hour, or sleeping on a board); and 7.
> [a]ny other factors concerning the individual's functional
> limitations and restrictions due to pain or other
> symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing SSR 96-7p, 1996 WL 374186, at *3 (SSA July

2, 1996)).

### B. Analysis

Edwards argues that this case should be remanded because the ALJ failed to:

(1) consider the opinion of consultative examiner Dr. Sebold; and (2) properly

evaluate Edwards' credibility.  Pl. Mem. at 10, 12.  The Commissioner counters that

substantial evidence supported the ALJ's RFC finding and that the ALJ properly

evaluated both Dr. Sebold's opinion and Edwards' subjective allegations.  Def. Mem.

at 10, 16, 22.  For the following reasons, the Court agrees with the Commissioner.

### 1. The ALJ Properly Considered Dr. Sebold's Opinion

The first issue presented is whether the ALJ properly considered the mental

impairments Dr. Sebold assessed when he conducted a psychological consultative

examination of Edwards on September 27, 2019.  AR at 563–68.  In his opinion, Dr.

Sebold concluded that Edwards has "no limitations" understanding, remembering, and applying simple directions and instructions; using reason and judgment to make work-related decisions; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; and being aware of normal hazards and taking appropriate precautions. *Id.* at 566–67. He determined that Edwards has "mild limitations" understanding, remembering, and applying complex directions and instructions; interacting adequately with supervisors, coworkers, and the public; and sustaining concentration and performing tasks at a consistent pace. *Id.* at 566. Finally, he found that Edwards has "mild to moderate limitations" regulating emotions, controlling behavior, and maintaining well-being. *Id.* at 566–67. Dr. Sebold stated that Edwards' '[d]ifficulties are caused by psychiatric symptoms as well as medical problems, which [Edwards] reports stem from a [motor vehicle accident] in 2018." *Id.* at 567. Notably, while diagnosing Edwards with "unspecific depressive disorder," Dr. Sebold concluded that "[t]he results of the present evaluation appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." *Id.*

Edwards contends that remand is warranted because the ALJ did not "adopt all of [Dr. Sebold's] assessed limitations as part of [his] [RFC] assessment or explain why certain limitations were not adopted." Pl. Mem. at 12. The Commissioner responds that the ALJ "explicitly" considered Dr. Sebold's opinion, and "found it

24

persuasive only to the extent that his conclusions indicated that [Edwards] had no more than mild work-related restrictions." Def. Mem. at 17 (citing AR at 16).

The Commissioner has the better of the argument. As an initial matter, Edwards cites no authority for the proposition that an ALJ must "adopt all of the assessed limitations" from a particular provider as part of an RFC; indeed, such an assertion is contrary to the weight of authority. *See, e.g., Dinorah M.L.E. v. Comm'r of Soc. Sec.*, No. 20-CV-8420 (JGK) (GRJ), 2022 WL 3566909, at *6 (S.D.N.Y. May 19, 2022) (ALJ "may reach a determination that 'does not perfectly correspond with any of the opinions of medical sources,' provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law") (quoting *Trepanier v. Comm'r of Soc. Sec.*, 752 F. App'x 75, 79 (2d Cir. 2018)), *adopted by* 2022 WL 2751869 (July 13, 2022).

Moreover, Edwards' statement that the ALJ did not "explain why certain limitations were not adopted" is erroneous. Pl. Mem. at 12. At step two of his analysis, the ALJ stated that he applied the "paragraph B" criteria to conclude that Edwards' "medically determinable mental impairment causes no more than mild work-related mental restrictions." AR at 16. In reaching this conclusion, the ALJ was "persuaded by" the opinions of, among others, Dr. Sebold, *id.*, who concluded that Edwards' mental impairments were not "significant enough to interfere with [Edwards'] ability to function on a daily basis." *Id.* at 567.

Contrary to Edwards' argument that the ALJ "failed to properly evaluate the opinion of record according to the rules and regulations," Pl. Mem. at 10, he

appropriately considered both the supportability and consistency of Dr. Sebold's opinion as required by the new SSA regulations. First, the "'supportability' factor asks how well a medical source supported [his] opinion(s) with 'objective medical evidence' and 'supporting explanations.'" *Acosta Cuevas*, 2021 WL 363682, at *14 (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Here, the ALJ evaluated the opinion of Dr. Sebold and determined that "his own objective findings and observations reflect that [Edwards] was cooperative during the assessment, that he exhibited adequately [sic] social skills, and that his affect was full with a neutral mood." AR at 16. The ALJ further noted that Dr. Sebold's "own examination findings . . . indicated only mild memory deficits without further abnormalities." *Id.* This assessment is supported by Dr. Sebold's opinion itself. *See id.* at 565–66 (other than "average to below average" intellectual functioning, Dr. Sebold noted "cooperative" demeanor and responses, "adequate" social skills, presentation, and manner of relating, "coherent" thought processes, "full range and appropriate" affect, "neutral" mood, "intact" attention and concentration, "good" judgment and insight). Because the ALJ "analyz[ed] [Dr. Sebold's] underlying . . . record[] against [his] opinion," he properly evaluated the supportability of this opinion regarding Edwards' mental limitations. *Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819810, at *10 (S.D.N.Y. Mar. 18, 2022).

Next, the "consistency" factor in the new SSA regulations requires the ALJ to address how the medical source's opinion compares with "evidence from other medical sources and nonmedical sources" in the file. 20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2). "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vecchio v. Comm'r of Soc. Sec.*, No. 20-CV-8105 (MKV) (SLC), 2021 WL 8013772, at *11 (S.D.N.Y. Dec. 1, 2021) (cleaned up), *adopted by* 2022 WL 873175 (Mar. 24, 2022). Here, the ALJ specifically mentioned the opinions of Dr. Kamin and Dr. Blackwell in determining Dr. Sebold's opinion was persuasive. *Id.* at 16. Dr. Kamin concluded that Edwards experienced only "mild" impairments with respect to the paragraph B criteria, and also determined that Edwards' mental condition was "non-severe." *Id.* at 104–05. Dr. Blackwell concluded that Edwards' "[d]iagnosis of unspecified depressive disorder [wa]s no[t] supported by the record as a whole" and that "[t]here [wa]s no evidence of a longitudinal history of any mental disorder." *Id.* at 633. The ALJ also noted that the overall record "reflects that the claimant did not seek specialized mental health treatment during the period at issue . . . [and] progress notes are absent mental status examinations indicative of ongoing behavioral or cognitive deficits." *Id.* at 16. Significantly, Edwards has not pointed to any evidence in the record to demonstrate otherwise, and even his own hearing testimony lacks any reference to mental health treatment or mental limitations. *See id.* at 47–98. Thus, the ALJ evaluated Dr. Sebold's opinion according to the proper legal standards.

Moreover, although the ALJ provided his analysis of Dr. Sebold's opinion in the section of his decision in which he discussed step two, he nonetheless explicitly mentioned how the mental limitations impacted the RFC determination.

Acknowledging that "[t]he limitations identified in the 'paragraph B' criteria are not

[an RFC] assessment," the ALJ explained that his

> [RFC] assessment reflects the degree of limitation [he]
> has found in the "paragraph B' mental function analysis.
> Therefore, the undersigned finds that the claimant's
> [other physical limitations and] . . . unspecified depressive
> disorder do not result in more than minimal limitation in
> his ability to perform basic work activities. As such, these
> conditions are non-severe in nature. Nevertheless, all
> medically supported restrictions have been incorporated
> into the decision's residual functional capacity
> assessment, including those stemming from both severe
> and non-severe impairments.

AR at 17.  Thus, the ALJ "clearly considered [Edwards'] mental impairments as

part of his larger RFC analysis." *Michelle B. v. Comm'r of Soc. Sec.*, No. 5:20-CV-

332 (DNH), 2021 WL 3022036, at *8 (N.D.N.Y. July 16, 2021) (rejecting plaintiff's

argument that ALJ failed to explain why mild mental impairment limitations not

reflected in RFC).

To the extent that Edwards contends that the ALJ should have included

mental impairments specifically in the portion of his decision detailing his RFC

analysis instead of at step two, such an argument is unavailing.  Edwards himself

does not allege that any additional mental limitations exist in the record which, if

accepted, would have altered the RFC analysis or the ALJ's ultimate decision.  He

therefore "has failed to show that adopting [Dr. Sebold]'s mental health findings . . .

would have precluded [him] from performing the representative jobs later identified

by the ALJ." *Heather C. v. Cmm'r of Soc. Sec.*, No. 21-CV-244 (DNH), 2022 WL

1604716, at *5 (N.D.N.Y. May 19, 2022).  Thus, any purported failures by the ALJ

to "explain why certain limitations were not adopted" specifically "as part of

[Edwards'] [RFC] assessment" rather than at step two of the analysis would be harmless.  Pl. Mem. at 12; s*ee Zabala*, 595 F.3d at 409 (remand unnecessary "where application of the correct legal principles to the record could lead only to the same conclusion") (cleaned up).[4]

Given the foregoing, the ALJ made no error in his assessment of Dr. Sebold's opinion.

### 2.  The ALJ Properly Assessed Edwards' Subjective Allegations

Next, Edwards argues that the ALJ failed to properly evaluate his credibility because he failed to apply the correct standards.  *See* Pl. Mem. at 12.[5]  Although an ALJ is "not required to accept the claimant's subjective complaints without question," he must still "take the claimant's reports of pain and other limitations into account."  *Campbell v. Astrue,* 465 F. App'x 4, 7 (2d Cir. 2012) (cleaned up).  However, "the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Klemons v. Kijakazi*, No. 20-CV-8326 (GWG), 2022 WL 4088080, at *9 (S.D.N.Y. Sept. 7, 2022) (cleaned up).  "If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's

---

[4] Notably, Edwards does not argue that the alleged mental impairments should have been classified as "severe" at step two, and given the foregoing analysis, the Court finds no reason to independently revisit that conclusion.

[5] Further on in his memorandum of law, Edwards states that "the ALJ did consider the Plaintiff's entire credibility in reaching a determination that she [sic] was not disabled."  *Id.*  Given the remainder of the argument, *id.* at 12–13, the Court interprets this phrasing to be an error.

subjective complaints." *Id.* (cleaned up).  Notably, "an ALJ is not obligated to place findings on the record as to each of" the seven factors set forth in the SSA regulations.  *Id.* at 10.[6]  "Instead, an ALJ's decision will be upheld where the ALJ thoroughly explained his credibility determination and the record evidence permits [the Court] to glean the rationale of the ALJ's decision."  *Id.*

Such is the case here for two reasons.  First, Edwards' contention that remand is warranted because "[t]he ALJ did not review and discuss the medications [Edwards] took, the treatment received, symptoms, daily routine, and measures taken to relieve the symptoms," is misleading.  Pl. Mem. at 13.  The ALJ specifically considered in his analysis the following: 1) "[d]ue to his pain, [Edwards] indicated that he lays down throughout the day and is unable to engage in heavy lifting, prolonged standing/walking, or reaching without difficulty"; 2) "[a]lthough he acknowledged the ability to attend to his personal care and watch TV, [Edwards] reported that he requires assistance with most cooking and housework"; 3) "[d]espite [Edwards'] reports of back and lower extremity pain, the treatment he received to address his symptoms was limited to conservative care that included physical therapy, prescription medication, and pain injections"; and 4) although

---

[6] The SSA regulations provide that an ALJ assessing a claimant's credibility will consider the following seven factors relevant to the claimant's symptoms: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; (vi) any measures used to relieve pain or other symptoms (e.g., lying flat on one's back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  *See* 20 C.F.R. § 404.1529(c)(3).

Edwards "sought emergency care for back pain and medication refills in December 2018, January 2019, May 2019, June 2019, and July 2019, he was not admitted for hospitalization in any of these instances." AR at 18. Edwards does not dispute any of these statements, nor does he specify any additional "treatment received, symptoms, daily routine, and measures taken to relieve [his] symptoms" which the ALJ should have further analyzed.

Second, the ALJ "did not simply rely on the absence of objective, affirmative proof" to discredit Edwards' subjective statements, but cited to evidence in the record, including medical source opinions, to substantiate his RFC determination. *Klemons*, 2022 WL 4088080, at \*10; *see* AR at 18–19. Edwards does not contest the ALJ's assessment of any of these medical opinions. Moreover, the ALJ specifically considered Edwards' subjective statements when he assessed the restrictions in the RFC. AR at 19 ("Given the claimant's ongoing pain . . . despite treatment [among other evidence] . . . the overall record is consistent with restricting [Edwards] to sedentary physical exertion . . ."). Accordingly, because "the ALJ gave reasons for his decision not to credit [Edwards]' subjective complaints [in their entirety], and to the extent not explicitly stated by the ALJ, the record evidence permits [the Court] to glean the rationale of the ALJ's decision . . . [there is] no error in the ALJ's credibility determination." *Klemons*, 2022 WL 4088080, at \*11.

In sum, a review of the record demonstrates that the ALJ based his RFC determination "on the medical record, [Edwards'] subjective complaints and testimony, [his lack of] mental health treatment history . . . as well as the medical

opinion evidence, and incorporated the key portions of this evidence into the RFC."

*Vecchio*, 2021 WL 8013772, at *15.  Even if "there may be some evidence in the

record that would support a contrary RFC determination, it is not for this Court to

reweigh the evidence or substitute its judgment for that of the ALJ" unless the facts

are such that "a reasonable factfinder would have to conclude otherwise."  *Id.*

(cleaned up).  That is not the case here, where Edwards himself has identified no

facts or evidence that would support a contrary RFC determination.  Therefore, the

ALJ's findings must be affirmed.  *See, e.g.*, *Herrera v. Comm'r of Soc. Sec.*, No. 20-

CV-7910 (KHP), 2021 WL 4909955, at *11 (S.D.N.Y. Oct. 21, 2021).

### III. CONCLUSION

For the foregoing reasons, Edwards' motion is denied, and the

Commissioner's cross-motion is granted.  The Clerk is directed to mark the motion

at Dkt. No. 12 as "denied," the motion at Docket Number 17 as "granted," and enter

judgment for the Commissioner.

**SO ORDERED.**

Dated: September 16, 2022
    New York, New York

JAMES L. COTT
United States Magistrate Judge